79 So.2d 426 (1955)
Alyce CLARK, Appellant,
v.
Lewis E. CLARK, Appellee.
Supreme Court of Florida. Special Division B.
March 23, 1955.
Rehearing Denied April 25, 1955.
J.B. Patterson and Thomas M. Coker, Jr., Fort Lauderdale, for appellant.
Richard M. Sauls, Hollywood, for appellee.
DREW, Justice.
During the pendency of divorce proceedings between the appellant, Alyce Clark, hereafter referred to as the wife, and the appellee, Lewis E. Clark, hereafter referred to as the husband, in June, 1952, the husband and wife entered into a separation agreement the pertinent portions of which so far as this litigation is concerned are paragraphs 3, 4, and 5. For the sake of clarity, we deem it appropriate to copy these paragraphs in full:
"3. The wife shall have custody and control of the minor child. However, the husband shall have the right to have said minor child in his custody at any reasonable time during any one year, providing the length of time the husband shall have custody of said child shall not exceed six (6) calendar months in any one year.
"The husband agrees to pay the wife the sum of Ten Dollars ($10.00) per week for the support of the minor child during the time that said child is in the custody of the wife. The husband also agrees to pay *427 any major medical expenses incurred by the wife on behalf of the child.
"4. The husband agrees to pay the wife the sum of Four Thousand Dollars ($4,000.00) cash, which shall be complete payment for any support, alimony or interest which the wife may have in the property owned by the parties. The husband agrees to further give the wife all furniture, furnishings, fixtures and equipment contained in beauty shop and apartment occupied by the wife for her use until such time as she may vacate premises of her own accord or re-marry.
"The wife shall be permitted to keep all income from the beauty shop business for her own use and to do with as she sees fit. The wife shall not be liable for any rent or taxes or other expenses except utilities during her period of occupancy of premises.
"5. The parties hereto are the owners as an estate by the entirety of the following described property:
Lots Ten (10), Eleven (11), Twelve (12), and Thirteen (13) of Block Thirty (30), Hollywood Beach Gardens First Addition, a subdivision in the Northeast Quarter (NE 1/4) of Section Thirteen (13), Township 51 South, Range 41 East, according to the plat thereof, recorded in Plat Book 10, page 15 of the public records of Broward County, Florida; said lands situate, lying and being in Broward County, Florida; together with the improvements thereon and the furniture, furnishings and fixtures therein contained.
"The wife agrees to convey all her right, title and interest in and to the above described property and has this day executed all necessary instruments for conveyance of her interest to the husband."
The above agreement was dated the 17th of June, 1952. From the record it appears that the subject agreement was the second such agreement between the parties, a former agreement of April 3, 1952 having been disapproved either by the master or the court at some stage in the divorce proceedings. We do not have the agreement of April 3rd before us hence we are unable to determine whether the provisions of that agreement shed any light upon the question which we are concerned with in this appeal.
The agreement of June 17th was introduced in evidence at a hearing before the master on the 20th of June, 1952. At that hearing the wife testified that the agreement was entered into freely and voluntarily and with adequate legal advice. Parenthetically, no question is raised in this proceeding concerning the fairness of the agreement nor is any point made of fraud, duress or matters of that kind. The wife testified concerning her income and the income of her husband, which was derived largely from the rental of the building described in the foregoing agreement and amounted to some $200 per month whereas the wife's income ranged from $200 to $300 per month. Concerning this agreement, and after it was offered in evidence, Mr. Clark was asked "what arrangements have you made with your wife concerning the length of the tenure of these premises" and he answered "as long as she wants to, she has it." At this point the wife's attorney asked her if she desired to have made a part of the agreement a provision "if the property is sold during the occupancy of the premises by the wife, the wife shall be entitled to all furnishings, furniture and equipment contained in the beauty shop and the apartment occupied by the wife," and she replied that she did. It was thereupon stipulated by the husband's attorney that such conditions were agreeable to the husband. Thereupon the master filed his report containing the following two paragraphs with relation to the property settlement agreement:
"2. Plaintiff testified that she is satisfied with the arrangement of said separation agreement concerning support and custody of the minor child and property settlement. A further addition to the separation agreement was agreed upon between the plaintiff and defendant which stated that if the premises which the wife is conveying to the husband is sold during the occupancy by the wife, the wife shall be entitled to all furnishings, furniture and equipment contained in the beauty shop and apartment *428 occupied by the wife. In all other respects, both plaintiff and defendant testified that they are satisfied with the terms and conditions of the separation agreement.
"5. Your Special Master further recommends that the separation agreement dated June 17, 1952 and set out in `Plaintiff's Exhibit 2', be approved and made a part of any Final Decree that this Court may recommend, and that as a further provision of said separation agreement, any final decree that this Court may recommend should set forth the provision that in the event the premises which the plaintiff has conveyed to the defendant are sold, during the occupancy of said premises by the plaintiff, the plaintiff shall be entitled to all furnishings, furniture and equipment contained in the beauty shop and in the apartment now occupied by the plaintiff."
The decree of the lower court of July 7, 1952 provided "that the separation agreement, dated 6/17/52 entered into between the parties be made a part of this final decree." The decree further provided "in the event the defendant should sell or convey Lots 10, 11, 12 and 13, Block 30 Hollywood Beach Gardens First Addition, according to the plat thereof recorded in Plat Book 10, page 15 of the public records of Broward County, Florida, together with improvements thereon and furniture, furnishings and fixtures therein contained while the plaintiff is occupying the premises in accord with the separation agreement made between the parties, the plaintiff shall be entitled to remove all furnishings, furniture and equipment contained in beauty shop and in apartment occupied by the plaintiff."
About a year after the decree was entered, the wife instituted in the lower court before the same judge who tried the original divorce proceedings, a bill for declaratory decree concerning the property settlement agreement alleging that the plaintiff was in doubt as to the legal effect of the provisions of the separation agreement of June 17, 1952, which gave her the right to the use of the beauty shop and the apartment space, alleging that it was the intention of the parties that the wife was to have such right so long as she should live or until she should remarry and that if such was not the legal effect of such agreement it be reformed to so provide. The prayer of the complaint was:
"This Court construe the agreement attached as Plaintiff's Exhibit 1 to grant to plaintiff the right to occupy and use the beauty shop space and apartment No. 5 in the `Clark Building' so long as she shall live, or until she should remarry, free from any obligation to pay rent, taxes or other expense except utilities, or, in the alternative, that said agreement be reformed to so provide."
The law in this jurisdiction is well settled that property settlement agreements between husband and wife, made in good faith, are valid and legal and should be construed and interpreted as other contracts. Underwood v. Underwood, Fla., 1953, 64 So.2d 281, and the authorities there cited. No question is raised here concerning the legality of said agreement. The only question presented is the interpretation of the provisions which we have quoted at length. In this, as in other contracts, our concern is the determination of the intention of the parties from the language used, consideration of surrounding circumstances, the objects to be accomplished, the other provisions in the agreement which might shed light upon the question and the occasion and circumstances under which it was entered into.
The wife argues that the legal effect of the agreement was to vest in her the right to occupy the subject space so long as she should live or until she should remarry. The lower court did not agree with this contention and neither can we. It was the judgment of the lower court, after hearing the evidence of the respective parties, and after due consideration of the agreement, that the husband under the agreement has the right to convey the property free and clear of any claim, right, title or interest of the wife except that if a final conveyance is made during the period of the occupancy of the premises by the wife that the furniture, furnishings and fixtures located both in the beauty shop and the apartment shall *429 become the property of the wife and she shall be entitled to remove the same and that the legal effect of the agreement of June 17th was that the wife should have the right to occupy the space used for the beauty shop and the apartment and to use the furniture, furnishings and fixtures therein so long as the property was owned by the husband.
We have no clear conviction that the construction so placed on the contract by the lower court is erroneous. There is a presumption that it is correct. Under such circumstances and for these reasons alone we should affirm. Helie v. Wickersham, 103 Fla. 254, 137 So. 226. Our own analysis, however, leads us to the same conclusion as that of the lower court. It is the only construction that could be placed upon the contract that would square with the language of the contract, disclosures of the evidence before the master in the divorce proceedings, the findings of the master and the decree of the lower court in the divorce proceedings.
The wife misinterprets the following sentence in paragraph 4 of the agreement, viz.: "The husband agrees to further give the wife all furniture, furnishings, fixtures and equipment contained in beauty shop and apartment occupied by the wife for her use until such time as she may vacate premises of her own accord or remarry." The wife applies the words "for her use until such time as she may vacate premises of her own accord or re-marry" to the beauty shop and the apartment whereas we think such words are applicable only to the furniture, furnishings, fixtures and equipment. This is especially true when we bear in mind that the preceding sentence provides for the payment by the husband of the sum of $4,000 in cash to the wife in "complete payment for support, alimony or interest which the wife may have in the property owned by the parties." (Emphasis ours.) The language is followed by a provision that the wife agrees to convey all her right, title and interest "in the above described property" (not only the real estate but all of the furniture, furnishings and fixtures contained therein) and recited that such deed "has this day" been executed. It could not have been intended to reserve a life estate because the provision for the termination in the event of remarriage would effectively preclude such a contention. Moreover, the evidence of the parties before the master to the effect that in the event the husband sold the property during the wife's occupancy she would be entitled to all of such furniture and fixtures clearly supports the conclusion that her right of occupancy extended only so long as the husband owned the property or until she remarried. This was the conclusion of the lower court when he entered the divorce decree of July 7, 1952, from which we have quoted, in which he held that if the premises were sold (inherent in this is the conclusion that the husband could have the right to sell) while the plaintiff occupied the same, she would be entitled to remove all furnishings from the premises. If it was the intention that the wife should occupy the premises so long as she lived or until she remarried, the provision in the decree of July 7th that she should be entitled to remove all furnishings, etc., has no meaning whatsoever. In other words, the agreement was that she could use the equipment and furnishings which belonged to the husband so long as he owned the property and she resided in it but if he interrupted her possession by a sale of the property, she would then have title to the furniture and furnishings and the right to remove them from the premises. To pursue the matter a little further, it is obvious that the value of the right of occupancy as contended for by the wife would be many times that of any other provision in the agreement. It would have been the principal consideration moving from the husband to the wife and the one that would have been uppermost in the minds  not only of the parties  but of their lawyers. Surely, under such circumstances, it would not have been treated as a pure incident or collateral matter which would require a judicial decree to establish.
The provisions of the contract with which we are concerned in no way relate to the liability of the husband for the support *430 of his child. Those provisions of the decree were separate and distinct from the provisions of the decree settling the property rights between the parties.
Affirmed.
MATHEWS, C.J., THOMAS, J., and McNEILL, Associate Justice, concur.