STURGIS, Chief Judge.
The appellee, Gulf Pipeline Company, Inc., plaintiff below, subcontracted with Clutter Construction Corporation to furnish certain labor and steel material incident to *758 a public works contract between the Clutter corporation, as prime contractor, and Oka-loosa County, Florida, for the construction and enlarging of three hospitals in that county. Upon completing the subcontract there was a balance due by Clutter to appel-lee of $10,414.17, and there remained payable by the county to Clutter, but not yet due, approximately $145,000.00 of the primary contract price. The oyer-all project was apparently supervised by a board or commission, acting under the authority and control of tire Board of County Commissioners of said county, known as the Board of Trustees of Okaloosa County, Florida Hospital System.
Gulf Pipeline Company, Inc., the subcontractor, brought this suit in chancery against the prime contractor, Clutter Construction Corporation, hereinafter called “Clutter,” the Board of Trustees of Oka-loosa County, Florida Hospital System, hereinafter referred to as the “Hospital Board,” and the Board of County Commissioners of Okaloosa County, Florida, hereinafter referred to as the “County Board.” The relief sought was a declaratory decree with respect to certain matters which in view of the issues on this appeal and our conclusions require no discussion, and also an equitable lien against the county for the unpaid balance due by Clutter. The complaint acknowledged that there was no legal basis by which plaintiff could assert a statutory lien against the county-owned real property upon which the improvements were made. The theory upon which the plaintiff asserted an equitable lien against the money owing by the county to Clutter was that it had substantially contributed to the performance of Clutter’s contract with the county and that unless such lien was judicially recognized and the county required to recognize it, the county might pay the balance payable by it to Clutter and Clutter might in turn fail to pay its obligation to plaintiff. It is obvious that the situation thus outlined is not unusual in character. It attends the position of any subcontractor who performs work and furnishes materials on credit extended in connection with any public works contract.
Clutter and the County Board severally moved to dismiss the complaint fo.r failure to state a cause of action. The County Board also moved to strike allegations designed to secure personal judgments against the members of the Board of County Commissioners. On December 2, 1963, the trial court entered an order granting the motion to strike and disposing of the County Board’s motion to dismiss as. follows:
“Upon proper showing by the defendant, Okaloosa County, and Board of County Commissioners to the Court by-filing a certified copy of any ‘To Pay’' Bond given with proper sureties on behalf of Clutter Construction Company to Okaloosa County, Florida, insuring payment of claims of labors [sic],, and/or materialmen on the job and the proper affidavit by the Clerk or Attorney that said Bond was in effect at the-time the contract was entered and that the work on the job has not been completed and accepted thus allowing the bond to remain in full force and effect,, this cause will be dismissed as to the defendant, Okaloosa County, and the Board of County Commissioners, and the plaintiff will be required to join as a party the surety.”
The order did not dispose of Clutter’s motion to dismiss.
On December 6, 1963, an order was entered granting plaintiff’s petition for rehearing, reinstating the cause, and allowing the defendants fifteen days to file their answers. That part of the prior order granting the motion to strike was adhered to. The County Board filed an answer generally denying the material allegations of the complaint. Clutter did not file an answer and suffered a decree pro confesso to be entered against it.
On January-8, 1964, final decree was entered, holding in substance: that $10,414.17 *759 was due from Clutter to the plaintiff; that stated amounts out of that sum were payable by plaintiff to named persons who are not parties to this suit; that a balance of •$612.43 would remain for plaintiff’s account; and that there was payable from the county to the original contractor, Clutter, the sum of approximately $145,000.00. It was thereupon decreed that the plaintiff holds an equitable lien upon the monies in the hands of the county for Clutter’s account to secure payment of said $10,414.17 payable by Clutter to plaintiff, and ordered the County Board, forthwith upon completion of the hospital projects, to pay said sum of $10,-414.17 to plaintiff by issuing four checks or warrants of the county totaling that amount, payable to the plaintiff and three of its creditors in the respective amounts stated by the decree. The decree also required the plaintiff to file with the clerk of the trial court a sworn statement of all unpaid bills, accounts, debts, claims or demands arising as an incident to the performance of its subcontract, and provided that any difference in the amounts listed by the decree — presumably additional amounts, as compared to such sworn statement — should be deducted (by the County Board) from the check or warrant in favor of the plaintiff. It recognized that the “original contractors” — presumably referring to Clutter. — made subcontracts with various parties incident to the hospital projects and that the County Board had accepted two of the projects, but not the one at Crestview; and it was decreed that upon the plaintiff furnishing to the clerk of the trial court proof that plaintiff had satisfactorily completed all the work and furnished all the materials which it obligated itself to perform and furnish under its subcontract, the County Board should thereupon forthwith pay to plaintiff and for its account the respective amounts set forth in the decree, deducting the same from any payments due by the county to Clutter.
The County Board seeks reversal of said final decree on the primary ground that the trial court erred in failing to finally dismiss the complaint for failure to state a cause of action against the County Board. It is contended that plaintiff’s claim is in essence an indirect or equitable garnishment, to which the county is not subject in the absence of statutory authority and that none exists. We hold that appellant’s position is well taken. See 3 Fla.Jur., Attachment and Garnishment, Sec. 37; Michigan Lumber & Mfg. Co. v. Duval County, 45 Fla. 472, 34 So. 245; Duval County v. Charleston Lumber & Mfg. Co., 45 Fla. 256, 33 So. 531, 60 L.R.A. 549.
The plaintiff does not seek by this suit to enforce its claim against the surety, if any, on the performance bond required by Section 255.05.[1] Florida Statutes, F.S.A., and which was presumably *760 furnished by Clutter to the county. The purpose of the statute is to protect laborers, materialmen and subcontractors on projects in which they cannot acquire a mechanic’s lien under Chapters 84-86, Florida Statutes, F.S.A. State v. Clutter Construction Corp., 132 So.2d 21 (Fla.App.1961), affirmed by the Florida Supreme Court in Clutter Construction Corp. v. State, 139 So.2d 426 (Fla.1962). Section 255.05, Florida Statutes, F.S.A., clearly affords the appellee an adequate remedy at law which would not have involved any expense to the appellant county, and under the circumstances relief in equity of the nature here sought is not available.
For the reasons stated, the decree appealed is
Reversed.
WIGGINTON and CARROLL, DONALD K., JJ., concur.

. Section 255.05, Florida Statutes, F.S.A., provides as follows:
“ * * * Any person entering into a formal contract with ⅜ * * guy-county of said state, ⅜ * ⅞ for the construction of any public building, * * * sRall be required, before commencing such work, to execute the usual penal bond, with good and sufficient sureties, with the additional obligations that such contractor shall promptly make payments to all persons supplying Mm labor, material and supplies, used directly or indirectly by the said contractor, or subcontractors, in the prosecution of the work provided for in said contract; and any person, making application therefor, and furnishing affidavit to the * * ⅜ county, * ⅜ ⅜ having charge of said work, that labor, material or supplies for the prosecution of such work has been supplied by him, and payment for which has not been made, shall be furnished with certified copy of said contract and bond, upon which, said person, supplying such labor, material or supplies shall have a right of action, and may bring suit in the name of the ⅜ ⅝ * county ⅜ ⅜ * prosecuting said work, for his use and benefit, against said contractor, and sureties, and to prosecute the same to final judgment and execution; provided, that such action, and its prosecution, shall not involve * ⅜ ⅜ any county, * » * ⅛ any expense.”