HERSEY, Judge.
Discount Drugs, Inc., takes this appeal from a final judgment construing a written lease agreement. Tulip Realty Company of Florida, the landlord, takes a cross appeal from the denial of its request for attorney’s fees. We affirm the final judgment with regard to interpretation of the lease agreement and we reverse the portion dealing with attorney’s fees.
THE PROVISIONS IN QUESTION
In June of 1968, the parties entered into a five year lease for the rental of certain commercial property. PARAGRAPH TWENTY of the lease, which is in contention here, provides:
TWENTY — Tenant agrees to pay to Landlord as rent, in addition to the foregoing minimum rent, a sum equal to the amount by which the minimum rent to be paid for any lease year is less than U/2% percent (1V2%) of the gross sales (as hereinafter defined) of the Demised Premises for said lease year, said sums being hereinafter sometimes referred to as “percentage rent”.
On or before the tenth (10th) day after the expiration of each month Tenant shall submit to Landlord a statement showing, in reasonable detail, the amount of gross sales of the Demised Premises during the preceding month. If 1V2% percent (1V2%) of the gross sales made during the preceding month shall be in excess of the minimum rent payable with respect to said preceding month then the amount of such excess shall be paid over to Landlord at the same time as the rendition of said monthly statement....
Also in contention is the language of a rider to the lease executed on the same day which provides:
PARAGRAPH FORTY-FIVE — With reference to Paragraph Twenty (20) herein, notwithstanding anything to the contrary contained, it is hereby understood and agreed that the excess percentage rent figure of One and one-half (1%%) percent shall not become effective and payable until the Tenants net gross sales shall exceed the sum of TWO HUNDRED FIFTY THOUSAND AND NO/100 ($250,000) DOLLARS per annum. No percentage rent shall be paid on the first $250,000 of gross sales. The U/2% shall apply only to gross sales in excess of $250,000.'
*766 The tenant’s gross sales did not exceed $250,000 until 1971. In that year and thereafter the tenant paid percentage rent in addition to minimum rent as required by the terms of the lease.
In 1973, the tenant exercised its option to renew the lease for an additional five years under the same terms and conditions.
In 1977, the parties entered into an amendment and extension of the lease to run until 1982. The provision of that document in contention here provides:
Commencing September 1, 1977, the rent will be increased to EIGHT THOUSAND THREE HUNDRED THIRTY AND NO/100 ($8,330.00) DOLLARS, payable in equal monthly installments of SIX HUNDRED NINETY FOUR AND 17/100 ($694.17) DOLLARS each.

Tenant agrees to pay to Landlord as rent, in addition to the foregoing minimum rent, a sum equal to the amount by which the minimum rent to be paid for by any lease year is less than llh% over ±5,000.00 of gross sales (as hereinafter defined) of the Demised Premises for said lease year, said sums being hereinafter sometimes referred to as “percentage rent”. On or before the tenth (10th) day after the expiration of each year, Tenant shall submit to Landlord a statement showing in reasonable detail, the amount of gross sales of the Demised Premises during the preceding year. If U/2% over $555,000.00 of the gross sales made during the preceding year shall be in excess of the minimum rent payable with respect to said preceding year then the amount of such excess shall be paid over to Landlord at the same time as the rendition of said annual statement.
Shortly after execution of the 1977 instrument the tenant asserted for the first time an interpretation of the lease agreement which was different from the interpretation which both parties had, in practice, placed upon the lease since its inception. The tenant’s interpretation placed in question the amount of percentage rent due the landlord. Before an actual defaült in rental payments occurred, the parties entered into a stipulation that the disputed amount would be placed in an escrow account pending determination by the court of the proper interpretation to be placed upon the disputed language.
THE UNDERLYING DEVICE
An investment in the construction and maintenance of rental property involves risks not incident to more conservative methods of making capital productive. For that reason the investor seeks a greater return than might otherwise be reasonably anticipated. A device frequently employed to accomplish the desired result is the percentage lease. The basic formula is relatively simple. Reducing it to words is rather more complex and, as here, occasionally results in ambiguity with its attendant problems. In a percentage lease the landlord becomes, in one sense, a limited partner of the tenant. The amount of rental is computed as a percentage or fraction of the income generated by the tenant’s business. In the instant case, percentage rental is a function of gross sales, as that term is defined in the documents. Partly because the investor, now landlord, has risked capital in the construction process and partly for other reasons, most percentage leases also contain a minimum rent requirement. This is ordinarily based upon the area rented and is customarily referred to as the rental rate per square foot. The tenant is obligated to pay the minimum rent regardless of the amount of income generated by the business, thus guaranteeing to the investor-landlord a minimum return on his investment. Literal application of both the percentage rental formula and the minimum rent formula produces a duplicating effect as to that amount of business-generated income which would produce, by application of the percentage rental formula, an amount equivalent to the minimum rent figure. In order to avoid this duplication most percentage leases contain a provision that insulates from application of the percentage rental formula that amount of business-generated income that would produce an amount approximately equal to the minimum rent.
*767 In the case at bar, both parties interpreted the original lease and rider as containing provisions conforming to this custom during the initial term and the option term of the lease, a period of nine years. The parties then entered into the amendment and extension agreement. The best that could be said for this document is that it was inart-fully drawn. In effect its language insulates twice as much business-generated income from application of percentage rental as is justified by the percentage rental philosophy and by the formulas customarily utilized in percentage leases.
COMPARISON OF THE TWO FORMULAS
It is first necessary to demonstrate that divergent results are occasioned by application of the two formulas. If we assume a hypothetical year in which gross sales were $400,000.00 and if we further assume that both the minimum rent figure ($3,570.00) and the excluded sales figure ($250,000.00) remain the same in each application so that only the language changes and not the amounts, we have a fair method of comparison.
Under the original terms (appellee’s position), gross sales of $400,000.00 is reduced by excluded sales of $250,000.00. The percentage of 1V2% is applied to the difference, $150,000.00, and produces percentage rent of $2,250.00. To this is added minimum rent of $3,570.00 to give Total Rent of $5,820.00.
The amended language (appellant’s position) requires, again, that gross sales of $400,000.00 be reduced by excluded sales of $250,000.00, producing a difference of $150,-000.00. The percentage is applied and $2,250.00 is the result. However, at this point the new language defines percentage rent as “a sum equal to the amount by which ... minimum rent ($3,570) is less than ...” the result of the previous computation ($2,250). Since $3,570.00 is not less than $2,250.00 there is no percentage rental to be added to minimum rent. Thus Total Rent is $3,570.00.
Demonstrably then, application of the original language (lease and rider) gives one result and application of the amended language (extension agreement) gives a different result.
The parties are in agreement that the changes intended to be made by the amendment were simply to increase the minimum rent from $3,570.00 to $8,330.00 and to substitute for the “excluded gross sales amount” of $250,000.00, the new exclusion of $555,000.00. However, the method of computation and the philosophy of the landlord’s expected economic return on his investment are reflected in one way by the original documentation and in another way by the 1977 amendment.

Lease and Rider

Minimum rent is computed by applying the rental rate of $1.50 per square foot to the amount of area covered by the lease. The record indicates this was approximately 2380 square feet. Minimum rent is thus $3,570. To determine what amount of gross sales should be insulated from percentage rental we need only ascertain the amount which, multiplied by 1V2%, would produce $3,570.00. This is accomplished by dividing $3,570.00 by 1V2%, the quotient of which is $238,000.00. This was then rounded off in the lease to $250,000.00 for ease of computation. The economic result is a return of 1V2% of gross sales with a minimum annual rental of $3,570.00 computed as a function of the square footage rental rate. Reducing these computations to a simple, mathematical formula produces the following:
Minimum Rent + 1V2% X (gross sales - $250,000) = TOTAL RENT.
This is appellee’s position and is the result mandated by the final judgment. It also is the result required by the relatively clear language of the lease and rider.

Amendment and Extension Agreement

Based on an area of 2380 square feet and an increased rental rate of $3.50 per square foot, the result is $8,330.00. This is the minimum rent figure in the amendment. $8,330.00 divided by llh% gives excluded sales of $555,333.00, rounded off to $555,- *768 000.00. As in the original documents these computations produce a return of P/2% on gross sales over $555,000.00 plus the minimum rental amount of $8,330.00. HOWEVER, the language of the amendment and extension requires the application of still another computation: simplistically stated, the percentage rent so computed is to be further reduced by the amount of the minimum rent but not below zero. This latter step effectively insulates $1,110,000.00 of gross sales (rather than the STATED threshold of $555,000.00) from percentage rental consequences.
Minimum rent + [1V2% X (gross sales - $555,000)] - minimum rent = TOTAL RENT.
It is self-evident that application of the two formulas cannot produce the same result. The formulas are different; results will necessarily differ. Appellant nevertheless argues that the language in the original lease and rider mandates an interpretation of those documents consistent with the language of the amended documentation. It is appellant’s contention that the definition of “percentage rent,” contained in the rider, modifies paragraph twenty of the lease to require the same double deduction contained in the modification and extension agreement. This supposedly follows from the language that
the excess percentage rent figure of One and one-half (1V2%) percent shall not become effective and payable until the Tenants net gross sales shall exceed the sum of TWO HUNDRED FIFTY THOUSAND AND NO/100 ($250,000) DOLLARS per annum. No percentage rent shall be paid on the first $250,000 of gross sales. The U/2% shall apply only to gross sales in excess of $250,000.
We find nothing in that language to justify the double deduction urged by appellant. It provides that the B/2% shall apply only to gross sales in excess of $250,000.00. Elsewhere it is provided that the lVh% so computed shall be paid in addition to the minimum rent.
To reiterate and summarize then, the conduct of the parties for several years was to compute rent under appellee’s formula. Also under appellee’s formula percentage rent is payable on gross sales over the stated threshold figure, which relates functionally to an equivalence of minimum rent.
Appellant’s formula on the other hand necessitates a double deduction. The threshold figure reduces total gross sales and, after application of the percentage factor, minimum rent (the functional equivalent of threshold) is again deducted. Further, percentage rent is payable in the first instance on sales in excess of approximately $555,000.00 and in the second instance, $1,000,000.00. This renders the stated figures of $250,000.00 and $555,000.00, respectively, meaningless. It is almost inconceivable that such convoluted reasoning was ever originally intended by either of the parties.
CONCLUSION
Accordingly, we resolve the conflict created by the different methods of computation called for by the documents in favor of appellee and we affirm the final judgment in that respect. We do so not only in recognition of the duty of this court to affirm the trial court’s construction of the agreement, unless such construction is clearly erroneous, Clark v. Clark, 79 So.2d 426 (Fla.1955); Bornstein v. Somerson, 341 So.2d 1043 (Fla. 2d DCA 1977); Rylander v. Sears Roebuck & Company , 302 So.2d 478 (Fla. 3d DCA 1974), but also, in recognition of the fact that the parties themselves placed this construction on the documents for several years and the president of appellant corporation testified that the court should construe the language of the extension agreement the same as it construes Paragraphs 20 and 45 of the original lease.
ATTORNEY’S FEES
We turn next to the question of the disal-lowance of attorney’s fees. Paragraph 26 of the lease provides in pertinent part:
TWENTY-SIX — If Tenant shall make any default or defaults under this Lease, Landlord may, at its election, immediately or at any time thereafter, without *769 waiving any claim for breach of agreement, and without notice to Tenant, cure such default or defaults for the account of Tenant; if the Landlord shall institute an action or summary proceeding against the Tenant based upon such default, or if the Landlord shall cure such default or defaults for the account of Tenant, then the Tenant will reimburse the Landlord for the expense of attorneys’ fees and disbursements thereby incurred by the Landlord, so far as the same are reasonable in amount....
Tenant agrees that in the event its default in performance of any of the terms, conditions or covenants of this Lease requires the Landlord, in the exercise of its sole discretion, to use the services of an attorney whether or not an employee of Landlord to attempt to, or to successfully remedy such default, that Tenant will reimburse Landlord for any and all expenses incurred in its use of such attorney and in any action which said attorney may take. Such expenses shall include, but are not limited to: legal fees, court costs, costs of filing and serving summons and/or complaints, etc. ...
We are bound to apply a strict construction to this agreement for attorney’s fees. Sunbeam Enterprises, Inc. v. Upthegrove, 316 So.2d 34 (Fla.1975); Ohio Realty Investment Corp. v. Southern Bank of West Palm Beach, 300 So.2d 679 (Fla. 1974). Nevertheless, the parties agreed in rather clear language that in the event of default requiring the service of an attorney, the landlord would be entitled to attorney’s fees and costs. The stipulation entered into by the parties in 1977 reserved all of the landlord’s rights under the lease. Payment of the disputed percentage rental into an escrow account was not payment to the landlord, who was effectively deprived of the use of that money regardless of the good faith of appellant. It is our view that a default occurred which required the landlord to obtain the services of an attorney and that the provisions of paragraph 26 became operable.
Accordingly, we affirm the conclusion of the final judgment that the landlord was entitled to recover percentage rental on gross sales in excess of the threshold amount stated in the lease and restated in a larger amount in the amendment, in addition to the minimum rent called for by those documents. We reverse that portion of the final judgment denying appellees’ request for attorney’s fees and we remand for a determination by the trial court of reasonable attorney’s fees to be awarded to appellee together with costs.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
DOWNEY and HURLEY, JJ., concur.