523 So.2d 791 (1988)
COASTAL CAISSON DRILL CO., INC., Appellant,
v.
AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, Appellee.
No. 87-783.
District Court of Appeal of Florida, Second District.
April 22, 1988.
Donald E. Hemke of Carlton, Fields, Ward, Emmanuel, Smith, Cutler & Kent, P.A., Tallahassee, and Alan B. Sundberg of Carlton, Fields, Ward, Emmanuel, Smith, Cutler & Kent, P.A., Tampa, for appellant.
Joseph W. Lawrence, II and Patricia Hart Malono of Cummings & Lawrence, P.A., Tallahassee, for appellee.
THREADGILL, Judge.
Coastal Caisson Drill Company (Coastal) appeals the dismissal with prejudice of its *792 claim against American Casualty Company (American) on a payment and performance bond issued pursuant to sections 255.05 and 337.18, Florida Statutes (1985). The trial court dismissed the claim after finding that Coastal had waived its rights to the bond in an agreement with the prime contractor. We reverse, finding the waiver provision violates the public policy of the State of Florida and is thus unenforceable.
In 1986, C-Way Construction Company (C-Way) contracted with the Florida Department of Transportation (DOT) to make improvements to New Pass Bridge in Sarasota County. The contract indicated that the contractor would be required to furnish a bond in accordance with sections 255.05 and 337.18, as did DOT's original request for bids. American, as surety, furnished the required bond which expressly provided that it would remain in full force until C-Way "promptly makes payment to all persons supplying labor, material, equipment and supplies used directly or indirectly" in the project.
C-Way subsequently subcontracted with Coastal for the furnishing of certain materials, labor and equipment. Their written agreement specifically referred to the DOT contract and a provision was added to the front of the subcontract agreement specifying that performance was to be in accordance with all applicable DOT specifications. Among these specifications are requirements that the contractor furnish a bond to assure that the contractor will "pay all legal debts pertaining to the construction of the project." Florida DOT, Standard Specifications for Road and Bridge Construction (1982). On the back of the subcontract agreement, however, prefaced by the statement that "the order on the reverse side ... is subject to the following conditions," were thirty paragraphs of terms and conditions. Paragraph 6 provided:
The Subcontractor, upon acceptance of this order, waives all rights under any bond or bond executed by Contractor and its surety ... and the subcontractor, for itself and others under it, hereby expressly waives and relinquishes the right to have, file, or maintain any mechanic's liens or claims against said buildings and agrees that this agreement waiving right of lien shall be an independent covenant.
Coastal performed in accordance with the subcontract. When C-Way failed to pay under the contract, Coastal filed suit, alleging that C-Way was liable for breach of contract and, in count III, that American was liable for damages on the surety bond.
American moved to dismiss count III on grounds that Coastal had "waived all rights under any bond or bonds executed by Contractor and its surety... ." The court granted the motion with leave to file an amended complaint "which would nullify the waiver provisions in the contract." An amended complaint was filed and again dismissed; a second amended complaint was dismissed with prejudice. Despite some express reservations, the trial court held that a subcontractor may waive the right to recover against the bond. This timely appeal ensued.
At the outset, we find merit in the appellant's argument that the contract was itself ambiguous as to the waiver of the subcontractor's rights to the surety bond. The parties had typed on the face of this form contract a provision expressly stating that performance was to be in accordance with applicable state regulations, without excepting any specific regulation or portion of the contract. This provision appears to conflict with the general waiver of rights contained in a list of conditions printed on the back of the contract. As appellant argued, any ambiguity in a contract should be construed against the drafter. Hurt v. Leatherby Ins. Co., 380 So.2d 432 (Fla. 1980); New York Life Ins. Co. v. Kincaid, 136 Fla. 120, 186 So. 675 (Fla. 1939); Sol Walker & Co. v. Seaboard Coast Line Railroad Co., 362 So.2d 45 (Fla. 2d DCA 1978); Lindquist v. Burklew, 123 So.2d 261 (Fla.2d DCA 1960). It is also generally held that a provision added to a form contract takes precedence over a printed, "boilerplate" term. Hurt v. Leatherby, 380 So.2d 432; Planck v. Traders Diversified, Inc., 387 So.2d 440 (Fla. 4th DCA 1980), rev. denied, 394 So.2d 1153 (Fla. *793 1981). We are even more persuaded, however, by certain public policy considerations.
The right to contract is limited by public policy, and where a private agreement contravenes an established interest of society or has a tendency to be injurious to public welfare, it is void as against public policy. City of Leesburg v. Ware, 113 Fla. 760, 153 So. 87 (Fla. 1934); 11 Fla.Jur.2d Contracts § 87. This court has followed the general rule that an individual cannot waive the protection of a statute that is designed to protect both the public and the individual. Asbury Arms Development Corp. v. Florida Dept. of Business Regulation, 456 So.2d 1291 (Fla. 2d DCA 1984). See also Lynch-Davidson Motors v. Griffin, 171 So.2d 911 (Fla. 1st DCA 1965), quashed on other grounds, 182 So.2d 7 (Fla. 1966).
For example, in Asbury Arms, the court found that a statute establishing a cooling-off period during which condominium buyers could void their purchase was designed to protect the public in general from high pressure sales techniques, as well as to protect the individual buyer. 456 So.2d at 1293. Therefore, allowing waiver of the provision was held against public policy. In the case at bar, the public interest in providing protection for subcontractors on public projects is even more compelling.
The plain language of section 255.05 has, from its inception, stated that the required bond is to be conditioned on payment to the subcontractors and other workmen. The Florida Supreme Court held in Fulghum v. State, 92 Fla. 662, 109 So. 644 (1928), that section 255.05 was enacted to afford workmen on public projects protection similar to that provided on private works by the mechanics' lien in chapter 713. See also Board of County Commissioners of Okaloosa County v. Gulf Pipeline Co., Inc., 168 So.2d 757, 760 (Fla. 1st DCA 1964). We think it is thus apparent that one purpose of the statute was to assure payment of the workers.
As in Asbury Arms, however, the statute here at issue was enacted to protect the public as well as the named recipients. The Fifth District has defined a payment and performance bond issued pursuant to section 255.05 as "an agreement to protect the owner of a building from two particular defaults by a builder. The payment portion of the bond contains the insurer's undertaking to guarantee that all subcontractors and materialmen will be paid and the performance part of the bond guarantees that the contract ... will be fully performed." Florida Board of Regents v. Fidelity & Deposit Co. of Maryland, 416 So.2d 30 (Fla. 5th DCA 1982) (emphasis added). See also Clutter Construction Corp. v. Baker Brothers, 168 So.2d 576, 578 (Fla. 1st DCA 1964), cert. denied, 173 So.2d 146 (Fla. 1965). The public is, in effect, the owner of any public works project.
Furthermore, it is likely that allowing individual waiver of the bond would adversely affect the entire bidding process. Contractors requiring their subcontractors to waive statutory bond rights could thus reduce their own bond premiums and obtain a competitive advantage over other bidders. Subcontractors might well be reluctant to work on projects where the contractors require waiver of their statutory protection. To the extent, therefore, that the public is best served by the fullest participation in bidding on government projects, we find such waiver would undermine public policy.
Had the legislature intended to allow waiver of this provision, it would have done so expressly. The legislature did, as the trial court noted, specify certain exceptions to the bond requirement and clearly could have included express provisions for individual waiver, just as it did in chapter 713.18 concerning mechanic's liens. Towerhouse Condominium, Inc. v. Millman, 475 So.2d 674, 676 (Fla. 1985). This court has previously noted the disparity between the coverage afforded by the mechanics' lien law relating to private work and that of the public construction bond issued pursuant to section 255.05. William H.Gulsby, Inc. v. Miller Construction Company, Inc., 351 So.2d 396, 397 (Fla. 2d DCA 1977).
Moreover, because the legislature has already delineated certain exemptions, the *794 waiver of rights against a bond on a public works project is an issue more appropriately determined in the legislative process than in a judicial forum. See Fulghum v. State, 92 Fla. 622, 109 So.2d 644 (Fla. 1926); William H. Gulsby, Inc. v. Miller Construction Co., Inc., 351 So.2d 396 (Fla. 2d DCA 1977). "When the legislature has actively entered a field and clearly indicated its ability to deal with such a policy question, the more prudent course is for the court to defer to the legislative branch." Bankston v. Brennan, 507 So.2d 1385 (Fla. 1987).
American argues that because section 255.05 was patterned after the Miller Act, 40 U.S.C. § 270a (1986), federal case law permitting a subcontractor to waive its right to sue on a prime contractor's bond should be applicable. See Delduca v. U.S. Fidelity & Guaranty Co., 357 F.2d 204 (5th Cir.1966), rehearing denied, 362 F.2d 1012 (1966); United States ex rel. B's Co. v. Cleveland Elec. Co. of South Carolina, 373 F.2d 585 (4th Cir.1967); United States ex. rel. Youngstown Welding & Eng. Co. v. Travelers Indem. Co., 802 F.2d 1164 (9th Cir.1986): Warrior Constructors, Inc. v. Harders, Inc., 387 F.2d 727, 729 (5th Cir.1967).
The federal decisions, none of which involve the Florida statutes at issue, are not binding on this court. Moreover, the provisions of section 255.05 here at issue originated in 1915, and thus predated the Miller Act, which did not become effective until 1935, by some twenty years. In light of our concern for the public policy of the State of Florida, we decline to construe section 255.05 under the federal interpretation of the Miller Act in this instance. See Bradshaw v. State, 286 So.2d 4 (Fla. 1973); see also International Association of Bridge, Structural and Ornamental Ironworkers, AFL-CIO v. Blount International Ltd., 519 So.2d 1009 (Fla.2d DCA 1987).
The appellee cites certain dicta from our decision in Settecasi v. Board of Public Instruction of Pinellas County, 156 So.2d 652 (Fla. 2d DCA 1963) for the proposition that a materialman may waive rights to a section 255.05 bond by agreement. In Settecasi, this court merely upheld the striking of an affirmative defense alleging waiver where no facts demonstrating waiver were set forth. The decision did not address whether waiver would have been a valid defense had it been properly pled.
We conclude that allowing private waiver of the statutory right to sue on the construction bond required by section 255.05 could frustrate the intent of the legislature by undermining the bidding process, and by risking state involvement in contractor/subcontractor disputes and the consequent delays of public works projects. Such a contractual waiver is in derogation of the public policy of the state and, therefore, unenforceable. Finding this issue to be of great public importance, we certify the following question to the Florida Supreme Court:
MAY A SUBCONTRACTOR FURNISHING LABOR, SERVICES OR EQUIPMENT WORTH OVER $200,000 ON A PUBLIC WORKS PROJECT LAWFULLY WAIVE ITS RIGHTS TO THE CONTRACTOR'S BOND REQUIRED PURSUANT TO SECTIONS 255.05 AND 337.18, FLORIDA STATUTES (1985)?
Reversed and remanded.
CAMPBELL, A.C.J., and PARKER, J., concur.