542 So.2d 957 (1989)
AMERICAN CASUALTY CO., Petitioner,
v.
COASTAL CAISSON DRILL CO., Respondent.
No. 72451.
Supreme Court of Florida.
March 16, 1989.
Rehearing Denied May 26, 1989.
Samantha Boge Cummings and Mary M. Piccard of Cummings, Lawrence & Venzina, P.A., Tallahassee, for petitioner.
Donald E. Hemke, Tampa and Alan C. Sundberg, Tallahassee of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., for respondent.
McDONALD, Justice.
The district court in Coastal Caisson Drill Co. v. American Casualty Co., 523 So.2d 791, 794 (Fla. 2d DCA 1988), certified the following question of great public importance:
MAY A SUBCONTRACTOR FURNISHING LABOR, SERVICES OR EQUIPMENT WORTH OVER $200,000 ON A PUBLIC WORKS PROJECT LAWFULLY WAIVE ITS RIGHTS TO THE CONTRACTOR'S BOND REQUIRED PURSUANT TO SECTIONS 255.05 AND 337.18, FLORIDA STATUTES (1985)?
We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer the certified question in the negative.
C-Way Construction contracted with the Department of Transportation (DOT) to make improvements to a bridge in Sarasota County. The contract provided that C-Way would furnish a payment and performance bond in accordance with sections 255.05 and 337.18, Florida Statutes (1985). American Casualty Company furnished the bond, which would remain in force until C-Way paid the subcontractors. C-Way's subcontract with Coastal Caisson Drill Company provided that performance would be in accordance with all applicable DOT specifications, which included the bond requirement. The back of the contract, however, contained other provisions, including one waiving all rights under any bond.
After Coastal performed its duties and C-Way failed to pay, Coastal filed suit against American, the surety. The trial court found a valid waiver and dismissed the original and amended complaints on the basis of that waiver. The district court reversed, finding the waiver provision violative of public policy, and submitted the above question.
*958 Initially, we disagree with the district court's finding the contract between Coastal and C-Way to be ambiguous as to waiver of the subcontractor's right to the bond. The intention of the parties is to be deduced from the language employed in the contract, and that intention is controlling. See Clark v. Clark, 79 So.2d 426 (Fla. 1955); Durham Tropical Land Corp. v. Sun Garden Sales Co., 106 Fla. 429, 138 So. 21 (1931). The language employed in the contract was clear. Although the front of the contract refers to DOT specifications, which require that the contractor furnish a bond, the contract does not state that either party is constrained from waiving its rights and, in fact, provides that the subcontractor waives rights under any bond. Coastal may not have read this provision before entering into the contract, but we should not engage in contract construction because of its neglect.
We can, however, find a contract that contravenes an established interest of society void as against public policy. City of Leesburg v. Ware, 113 Fla. 760, 767, 153 So. 87, 90 (1934). See also City of Miami v. Benson, 63 So.2d 916 (Fla. 1953). Coastal contends the legislature intended to protect the owner of the project, i.e., the public, by requiring that the subcontractors be paid. Because sections 255.05 and 337.18 are for the protection of the public, Coastal argues that their provisions cannot be waived by an individual subcontractor.
Clearly, the public is protected by the performance bond because, on default by the contractor, the bond assures completion of the contract. It is more difficult to see how a bond providing for payment to the subcontractors protects the public because the subcontractors cannot place a lien on a public building; they only have recourse against the contractor. In Fulghum v. State ex rel. Merritt, 92 Fla. 662, 109 So. 644 (1926), this Court stated that the general purpose of the statute is to provide protection to subcontractors on public work in lieu of the lien afforded by other statutes on private work. Fulghum presented the question of whether a subcontractor on public work who has furnished labor could recover from the surety upon a bond executed pursuant to the applicable statute. The Court did not consider the public policy benefits of paying the subcontractors, however, because it did not have to reach that issue to decide the case.
We find that the statutes at issue here are for the protection of the public as well as the subcontractors. If the subcontractors have a right to the bond, they have added security. This added security is economically beneficial to the public "in that the shifting of the risk of non-payment from the [subcontractors] to the surety will tend to the standardization of prices and wages and also of the quality of labor and materials." Corbin, Third Parties as Beneficiaries of Contractors' Surety Bonds, 38 Yale L.J. 1, 16 (1928) (footnote omitted). Besides being in the public's financial interest, keeping subcontractors secure also lessens the risk of delay caused by litigation.
American argues that this Court should consider the mechanics' lien statute, section 713.20(2), Florida Statutes (1987), in construing the waiver of rights under section 255.05 because the payment bond is merely a substitute for a mechanics' lien.[1] A subcontractor is free to waive its mechanics' lien, thus, according to American, Coastal should have been free to do likewise. Section 713.20(2) formerly provided that anyone, other than a laborer, could waive a mechanics' lien at any time. The legislature recently amended this statute, however, and it now provides that a right to claim a lien may not be waived in advance. Ch. 88-397, Laws of Fla. Although not controlling in this case, the amendment illustrates a legislative policy against waiver. Moreover, even though the legislature provided certain exemptions, which do not apply here, from the bond requirement in *959 section 255.05,[2] it chose not to allow unrestricted waiver.
We hereby answer the certified question in the negative and approve the decision of the Second District Court of Appeal.
It is so ordered.
EHRLICH, C.J., and OVERTON, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] American also argues that we should consider the Miller Act, 40 U.S.C. § 270a et seq. (1986), and federal case law, which permit waiver. The district court stated: "The federal decisions, none of which involve the Florida statutes at issue, are not binding on this court." Coastal Caisson Drill Co. v. American Casualty Co., 523 So.2d 791, 794 (Fla. 2d DCA 1988). We agree.
[2] § 255.05(1)(a), Fla. Stat. (1987), provides in part:

When such work is done for the state and the contract is for $100,000 or less, no payment and performance bond shall be required... . when such work is dons for the state, the director of the Department of General Services may delegate to state agencies the authority to exempt any person entering into such a contract amounting to more than $100,000 but less than $200,000 from executing the payment and performance bond.