677 So.2d 909 (1996)
RUNYON ENTERPRISES, INC., d/b/a A Temporary Solution, Appellant,
v.
S.T. WICOLE CONSTRUCTION CORPORATION OF FLORIDA, INC., et al., Appellees.
No. 95-1633.
District Court of Appeal of Florida, Fourth District.
July 3, 1996.
Rehearing, Clarification, and Rehearing Denied August 30, 1996.
*910 Lee A. Weintraub and Mark J. Loterstein of Benson, Moyle & Chambers, Fort Lauderdale, for appellant.
Oscar E. Soto and Patricia Burton of Fleming, O'Bryan and Fleming, P.A., Fort Lauderdale, for appellees.
Rehearing, Clarification, and Rehearing En Banc Denied August 30, 1996.
PARIENTE, Judge.
Appellant, Runyon Enterprises, Inc., d/b/a A Temporary Solution (plaintiff), appeals from a judgment in favor of appellees S.T. Wicole Construction Corporation of Florida, Inc. (the general contractor) and its surety, National Union Fire Insurance Company of Pittsburgh, PA (National Union) (collectively, defendants). We reverse because the trial court erroneously allowed the jury to consider whether joint check agreements between the general contractor, its subcontractor, Sovereign Constructors, Inc. (Sovereign), and plaintiff limited defendants' liability for services rendered by plaintiff as a subsubcontractor to $40,000 per school project. This issue should have been resolved in plaintiff's favor by the trial court as a matter of law.
The general contractor was responsible for constructing two schools, Schools "O" and "H" (collectively, the school projects), and therefore was required by statute to post payment and performance bonds. See § 255.05, Fla. Stat. (1995). National Union was the surety on the payment bonds which provided security for amounts due to "all persons supplying labor ... used directly or indirectly by [the general contractor] or any subcontractor under him in the prosecution of said work."
In the fall of 1991, the general contractor entered into written lump sum subcontracts with Sovereign for the shell/masonry work required to construct the school projects. Subsequent to commencing work on its subcontract, Sovereign contracted with plaintiff, a temporary labor supply company, to provide the necessary labor force.
Soon after plaintiff began supplying labor to the school projects, plaintiff, Sovereign, and the general contractor entered into two agreements entitled joint check agreements. These agreements were drafted by the general contractor. The joint check agreements provided that the general contractor would pay Sovereign and plaintiff through joint checks up to the amount of $40,000 per project. At no time did plaintiff ever enter into a contract directly with the general contractor.
After the general contractor paid plaintiff $40,000 per project pursuant to the joint check agreements, plaintiff continued to supply labor on the school projects as a sub-subcontractor through its direct contract with Sovereign. Sovereign included plaintiff's name on its monthly reports to the general contractor that listed all of Sovereign's suppliers and subcontractors. Plaintiff timely served notice on the general contractor that it was supplying labor to the school projects under an order given by Sovereign and that it intended to look to any section 255.05 bond for protection and payment.
Sovereign was subsequently terminated as a subcontractor on the school projects and plaintiff discontinued its services on the school projects. Plaintiff served notices of nonpayment on the general contractor and National Union and then filed suit to recover $172,169.77 on School H and $183,457.34 on School O under the payment bonds.
The trial court denied plaintiff's motion in limine which sought to exclude the joint check agreements from the jury's consideration. The trial court also refused to allow *911 plaintiff to argue during closing arguments about the content of the payment bonds, which had previously been admitted into evidence without objection. In answer to special interrogatories, the jury found that the joint check agreements limited the general contractor's liability to plaintiff to $40,000 on each project.
The trial court erred by allowing the jury to interpret the meaning of the unambiguous joint check agreements. The joint check agreements, as a matter of law, were not lump sum contracts but simply agreements between plaintiff, the general contractor, and Sovereign that the general contractor would pay the first $40,000 due to plaintiff on each of the school projects through a joint check issued to plaintiff and Sovereign.
Furthermore, defendants' contention that their liability was limited by the joint check agreements is in effect a claim that plaintiff waived its protection under section 255.05 to recover under the payment bonds for future amounts due it as a sub-subcontractor under its contract with Sovereign. However, a sub-subcontractor is statutorily prohibited from waiving in advance its rights under a section 255.05 bond. See §§ 255.05, 713.01(16)(c), Fla. Stat. (1995); see also American Casualty Co. v. Coastal Caisson Drill Co., 542 So.2d 957 (Fla.1989).
According to section 255.05:
(1)(a) Any person entering into a formal contract with the state or any county ... for the construction of a public building... shall be required, before commencing the work, to execute, deliver to the public owner, and record in the public records of the county where the improvement is located, a payment and performance bond with a surety insurer authorized to do business in this state as surety. The bond must state the name and principal business address of both the principal and the surety and must contain a description of the project sufficient to identify it. Such bond shall be conditioned that the contractor perform the contract in the time and manner prescribed in the contract and promptly make payments to all persons defined in s. 713.01 whose claims derive directly or indirectly from the prosecution of the work provided for in the contract.... The claimant shall have a right of action against the contractor and surety for the amount due him or her....
(2) ... A claimant may not waive in advance his or her right to bring an action under the bond against the surety.

(Emphasis supplied).
Section 255.05 is "remedial in nature and therefore, entitled to a liberal construction, within reason, to effect its intended purpose." Palm Beach County v. Trinity Indus., Inc., 661 So.2d 942, 944 (Fla. 4th DCA 1995). "Historically, the purpose of this section is to protect subcontractors and suppliers by providing them with an alternative remedy to mechanic's liens on public projects." Id. Sub-subcontractors are statutorily included within the class of those required to be protected by a section 255.05 bond. See § 713.01(16)(c); Duval Asphalt Prods., Inc. v. E. Vaughn Rivers, Inc., 620 So.2d 1043, 1046 (Fla. 1st DCA 1993). As the supplier of labor to the school projects through its contract with Sovereign, plaintiff was statutorily protected under the payment bonds as a sub-subcontractor.
Our supreme court has explained that section 255.05 is for the protection of the public as well as the subcontractors:
If the subcontractors have a right to the bond, they have added security. This added security is economically beneficial to the public "in that the shifting of the risk of non-payment from the [subcontractors] to the surety will tend to the standardization of prices and wages and also of the quality of labor and materials."
American Casualty, 542 So.2d at 958 (citation omitted). Since section 255.05 is for the protection of the public, its provisions cannot be waived by an individual subcontractor. Id.
In this case, the joint check agreements were no more than what they purported to beagreements to jointly issue checks to a sub-subcontractor up to an amount certain. This interpretation of joint check agreements is consistent with federal cases *912 interpreting the Miller Act, a federal statute similar to section 255.05. Under the Miller Act, however, rights can be intentionally waived. See Coastal Caisson Drill Co. v. American Casualty Co., 523 So.2d 791, 794 (Fla. 2d DCA 1988), approved, 542 So.2d 957 (Fla.1989). In United States ex rel. Youngstown Welding & Engineering Co. v. Travelers Indemnity Co., 802 F.2d 1164, 1166-67 (9th Cir.1986), the Ninth Circuit held that a waiver of rights under the Miller Act will not be implied from a joint check arrangement, as the additional security provided the supplier by a joint check payment does not evidence an intention to give up the statutory security provided by the Act. See also United States ex rel. Friedrich Refrigerators, Inc. v. Forrester, 441 F.2d 779, 782 (5th Cir.1971).
We thus hold as a matter of law that the joint check agreements did not limit plaintiff's right to recover under its contract with Sovereign and that plaintiff may avail itself of the protection of the payment bonds issued for its benefit. Therefore, pursuant to section 255.05, plaintiff had a right of action against both Wicole, the general contractor and its surety, National Union, for amounts due it under plaintiff's contract with Sovereign. This holding does not preclude defendant from raising other applicable defenses to plaintiff's claim.
Accordingly, we reverse the judgment in favor of defendants and remand this cause for a new trial and proceedings consistent with this opinion.
REVERSED AND REMANDED.
KLEIN, J., and GENDEN, MICHAEL, A., Associate Judge, concur.