DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**K & M ELECTRIC SUPPLY, INC.,**
Appellant,

v.

**BROWN ELECTRICAL SOLUTIONS, LLC,** et al.,
Appellees.

No. 4D2025-1740

[April 1, 2026]

Appeal from Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Bradley G. Harper, Judge; L.T. Case No. 50-2022-CA-012561-XXXX-MB.

James Scott Telepman of Cohen, Norris, Wolmer, Ray, Telepman, Berkowitz & Cohen, North Palm Beach, for appellant.

Vincent F. Vaccarella and Zachary L. Auspitz of Vincent F. Vaccarella, P.A., Fort Lauderdale, for appellees.

LOTT, J.

Appellant, K & M Electric Supply, Inc. ("K&M"), appeals the grant of partial summary judgment for Appellees, GlobalTech, Inc. ("GlobalTech") and Arch Insurance Company ("Arch Insurance") (collectively "Appellees"), on Count IV of its complaint for payment under a public construction bond, pursuant to section 255.05, Florida Statutes (2022). With the benefit of oral argument, we affirm.

## I. Background and Proceedings Below

GlobalTech was the general contractor for a project to improve the Riviera Beach Water Treatment Plant, and as required by law, obtained a bond from surety Arch Insurance to secure payments for the project. GlobalTech subcontracted with Brown Electrical Solutions, LLC, ("Brown") for Brown to install certain electrical fixtures in the contract. The subcontract with Brown was for about $99,000.

1

K&M was a "materialman"—a supplier of materials that would eventually make their way into the project by way of the subcontractor. K&M provided electrical materials to the subcontractor, Brown, for use in the project. At Brown's request, K&M provided Brown with well over $100,000 in materials that Brown claimed were for use in the project.

After Brown failed to pay, K&M made a claim on the bond for about $123,000—all the materials that Brown claimed it ordered for the project, plus some legal fees and other charges.[1]

Based on K&M's $123,000 claim, Appellees moved for summary judgment, arguing that K&M's notice of nonpayment of the bond was "fraudulent." Appellees argued there was no dispute that the notice was "fraudulent" within the meaning of the statute because, among other things, (1) the notice contained legal fees and other charges that are specifically not allowed to be claimed; (2) the claim was significantly higher than Brown's total subcontract on the project of about $99,000; and (3) the claim contained items that were not covered by the subcontract or otherwise fell outside its scope, such as a claim for wire in a length that greatly exceeded the amount allowed under Brown's subcontract.

K&M did not file a response in opposition to the motion, but filed an (untimely) affidavit[2] setting out that it did not willfully exaggerate its claims, and instead merely relied on Brown's representations as to what was purchased for the project. The affidavit also noted that Brown was able to verify about $56,000 of the materials claimed on the bond were in fact delivered to the job site and thus actually incorporated into the project.

## II. Analysis

### A. Section 255.05 bond claims and the fraudulent lien defense

So, what was K&M actually allowed to claim on the bond? "[I]n order for one who has furnished materials to have a lien, the materials must either be 'specially fabricated' or actually incorporated into the

---

[1] K&M is still actively litigating other claims related to nonpayment and breach of contract against Brown, which was not a party to this appeal. We do not mean to make any comment affecting the ongoing litigation, and the facts set forth herein are the facts as developed between the parties to this appeal.

[2] We need not dwell on this procedural quirk; even if that affidavit were deemed a timely response, it would not help K&M.

improvement." *Aquatic Plant Mgmt., Inc. v. Paramount Eng'g, Inc.*, 977 So. 2d 600, 603 (Fla. 4th DCA 2007).[3] Here, the materials K&M furnished were not specially fabricated, so K&M could recover on the bond only for qualifying materials "actually incorporated" into the project.

"A claimant who serves a fraudulent notice of nonpayment forfeits his or her rights under the bond," and "[t]he service of a fraudulent notice of nonpayment is a complete defense to the claimant's claim against the bond." § 255.05(2)(a)2., Fla. Stat. (2022). Section 255.05(2)(a)2. sets forth what makes a notice "fraudulent":

> A notice of nonpayment is fraudulent if the claimant has willfully exaggerated the amount unpaid, willfully included a claim for work not performed or materials not furnished for the subject improvement, or prepared the notice with such willful and gross negligence as to amount to a willful exaggeration. However, a minor mistake or error in a notice of nonpayment, or a good faith dispute as to the amount unpaid, does not constitute a willful exaggeration that operates to defeat an otherwise valid claim against the bond.

*Id.*

### B. Standard of Review

"We review an order granting summary judgment de novo." *Kincaid v. Walmart, Inc.*, No. 4D2024-2245, 2026 WL 758378 (Fla. 4th DCA Mar. 18, 2026). Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fla. R. Civ. P. 1.510(a).

The party asserting that a claim is fraudulent bears the burden of proving that fact. *Gator Boring & Trenching, Inc. v. Westra Constr. Corp.*, 210 So. 3d 175, 182 (Fla. 2d DCA 2016).

In *Kincaid*, we discussed at length the summary judgment standard where the nonmoving party bore the ultimate burden of proof at trial.

In addition, where, as here, the movant bears the burden of proof on the underlying claim at trial, the movant must affirmatively show the absence of a genuine issue of material fact: it must support its motion with

---

[3] Section 255.05 incorporates, for all purposes relevant to this appeal, the definitions set forth in the Mechanics Lien statute, section 713.01. *See* § 255.05(1)(c), Fla. Stat. (2022).

credible evidence that would entitle it to a directed verdict if not controverted at trial. "In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (quoting *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. in State of Ala.*, 941 F.2d 1428, 1438 (11th Cir. 1991)). "If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the non-moving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Id.* (cleaned up).

"Only if after introduction of the non-movant's evidence, the combined body of evidence presented by the two parties relevant to the material fact is still such that the movant would be entitled to a directed verdict at trial—that is, such that no reasonable jury could find for the non-movant—should the movant be permitted to prevail without a full trial on the issues." *Id.* at 1116 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)); *accord Gracia v. Sec. First Ins. Co.*, 347 So. 3d 479, 484 (Fla. 5th DCA 2022) ("To obtain summary judgment, if the movant bears the burden of proof on an issue because as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the defense to warrant judgment in his favor.") (citing *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002)); *Perrin v. Dep't of Transp.*, 421 So. 3d 755, 759 n.6 (Fla. 3d DCA 2025) ("Since the burden of persuasion at trial was on Perrin, to prevail in her cross-motion for summary judgment, Perrin had the initial burden of demonstrating that there is 'no genuine dispute of material fact and [Perrin] is entitled to judgment as a matter of law.'"); *see also* Wright & Miller, Federal Practice & Procedure § 2727.1 (4th ed. 2025) ("[I]f the movant bears the burden of proof on a claim at trial, then its burden of production is greater. It must lay out the elements of its claim, citing the facts it believes satisfies those elements, and demonstrating why the record is so one-sided as to rule out the prospect of the nonmovant prevailing.").

## C. **Application**

The trial court did not err in granting summary judgment; there were no genuine disputes of material fact such that any reasonable trier of fact could find that the notice of nonpayment was not "fraudulent" within section 255.05(2)(a)2.'s meaning.

That is not to say K&M made the claim in bad faith or with malicious intent; that is not (necessarily) what the statute demands. It doesn't necessarily matter if the claimant, in his heart of hearts, genuinely believed that he was entitled to everything he claimed at the time he claimed it.

Rather, section 255.05(2)(a)2. says a claim is fraudulent if the claimant does any one of three things: (1) willfully exaggerated the amount unpaid, (2) willfully included a claim for work not performed or materials not furnished for the subject improvement, or (3) prepared the notice with such willful and gross negligence as to amount to a willful exaggeration. § 255.05, Fla. Stat. (2022); *see Sprinkler Fitters & Apprentices Local Union No. 821, U.A. v. F.I.T.R. Serv. Corp.,* 461 So. 2d 144, 151 nn. 3, 6 (Fla. 3d DCA 1984) (noting "Section 255.05, Florida Statutes[] was patterned after the Miller Act . . . and relied on cases decided under this federal counterpart," and explaining that under the Miller Act, "[a]ny lien asserted . . . in which the lienor has willfully exaggerated the amount for which such lien is claimed . . . or in which the lienor has compiled his claim with such willful and gross negligence as to amount to a willful exaggeration shall be deemed a fraudulent lien."). Section 255.05(2)(a)2. also says that "a minor mistake or error in a notice of nonpayment, or a good faith dispute as to the amount unpaid, does not constitute a willful exaggeration that operates to defeat an otherwise valid claim against the bond." *Id.*

Here, K&M did not, before noticing the bond claim, conduct any investigation whatsoever into the amount it was actually entitled to claim on the bond, which is the amount of materials "actually incorporated" into the project. *Aquatic Plant Mgmt., Inc.*, 977 So. 2d at 603. K&M instead claimed every dollar billed to the project by Brown. Of the roughly $123,000 claimed, only about (at most) $56,000 was actually incorporated into the project and therefore properly subject to the claim.

Accordingly, the third prong of the fraudulent lien test—that the claimant "prepared the notice with such willful and gross negligence as to amount to a willful exaggeration"—is met given the undisputed record in this case. No reasonable trier of fact could find otherwise: "the combined body of evidence presented by the two parties relevant to the material fact" is such that Appellees "would be entitled to a directed verdict at trial." *Fitzpatrick*, 2 F.3d at 1116. And no reasonable trier of fact could find the error—the bulk of the claim—was "a minor mistake."

Multiple errors existed in the notice—claiming (1) disallowable expenses, (2) items not within the subcontract's scope, (3) an amount

above the entirety of the subcontract's value, and (4) items that were not "actually incorporated" into the project. Perhaps any of these errors could have, standing alone, led to some genuine dispute of material fact about whether the notice was prepared with such willful and gross negligence as to amount to a willful exaggeration, or to a genuine dispute about whether the errors were a "minor mistake."

But the upshot of this case is that without even the most basic investigation as to what K&M was entitled to claim, K&M claimed $123,000 on a bond that it now acknowledges could pay out, at most, about $56,000. The trial court did not err in finding that the **_more than 100% discrepancy_** met prong (3) of the "fraudulent" test. That discrepancy was not a "minor mistake." It was gross negligence. Given the record in this case, the claim was "fraudulent" as a matter of law.

This holding is well in line with precedent.[4] In _Newman v. Guerra_, 208 So. 3d 314, 319–20 (Fla. 4th DCA 2017), we found "no abuse of discretion in the trial court's determination that the contractor's lien was fraudulent, where the court found that the lien was willfully exaggerated and included items not properly lienable 'by any stretch of the imagination.'" _Id._ (quoting _Levin v. Palm Coast Builders & Constr._, 840 So. 2d 316, 317 (Fla. 4th DCA 2003)). Likewise, here, the bulk of what K&M claimed—improper fees, matters outside the scope of, or exceeding, the subcontract, and items that were not actually incorporated into the final project—were not properly claimable by any stretch of the imagination.

In _Viyella Co. v. Gomes_, 657 So. 2d 83 (Fla. 3d DCA 1995), the court affirmed a grant of summary judgment where the claimant filed a claim for about $58,000 when in fact about $28,000 of work was not performed and therefore not claimable. _Id._ at 85. The discrepancy was, as in this case, nearly double the value of the properly payable amount. _Id._

In _Hobbs Construction & Development, Inc. v. Presbyterian Homes of Synod of Florida_, 440 So. 2d 673 (Fla. 1st DCA 1983), the court affirmed a partial grant of summary judgment where the claimant "included in its claim of lien those amounts which could not be justified by change orders or the terms of the contract." _Id._ at 674. The court found that this fact "supports the trial court's determination of a willful exaggeration, resulting in an unenforceable fraudulent lien." _Id._

---

[4] In construing section 255.05, Florida courts have looked to the Mechanics Lien Law, section 713.01, _et seq._, Florida Statutes (2022), as well as the federal Miller Act, 40 U.S.C. §§ 3131–3134 (formerly 40 U.S.C. § 270a), for guidance. _E.g., Blosam Contractors, Inc. v. Joyce,_ 451 So. 2d 545, 548 (Fla. 2d DCA 1984).

In *Ponce Investments Inc. v. Financial Capital of America*, 718 So. 2d 280 (Fla. 3d DCA 1998), the court reversed a trial court's denial of the defense where "[t]he Purchaser included in its statutory lien amounts for items which, under any view of the case, were not properly part thereof," of which the "amounts included attorney's fees, overhead, and items previously paid for." *Id.* at 282. Given these facts, the court found that "the trial court's conclusion that the Purchaser acted on good faith, thereby precluding the finding of a fraudulent lien . . . is simply not supported by the record." *Id.*

In *Delta Painting, Inc. v. Baumann*, 710 So. 2d 663 (Fla. 3d DCA 1998), the court held that a finding of fraud was supported by competent, substantial evidence where "there was evidence that Delta's claim of lien included amounts for additional work unauthorized" and "[t]here was also evidence that Delta had knowingly included a claim for work not performed or materials not furnished." *Id.* at 664. The court noted that "such evidence is wholly inconsistent with any notion of a minor mistake or good faith dispute between the parties." *Id.*

And in *Skidmore, Owings & Merrill v. Volpe Construction Co., Inc.*, 511 So. 2d 642 (Fla. 3d DCA 1987), the court noted that "[t]he inclusion of items not authorized by change orders or by contract renders the lien fraudulent and unenforceable," and reversed a trial court's finding that it was not willfully exaggerated. *Id.* at 644.

The takeaway is that by including unauthorized items, a claimant exposes themselves to a risk of a fraudulent notice of nonpayment defense. But this is not a case that requires us to decide difficult questions about where to draw the line between a "minor mistake" and a "willful exaggeration." K&M's bond claim contained more unauthorized items than authorized ones. Under such undisputed factual circumstances, the trial court did not err in granting summary judgment on the fraudulent notice of nonpayment defense. A finding that K&M had "prepared the notice with such willful and gross negligence as to amount to a willful exaggeration" is the only conclusion a reasonable trier of fact could reach.[5]

---

[5] Section 255.05(2)(a)2., Florida Statutes (2022), also provides that "[t]he negligent inclusion or omission of any information in the notice of nonpayment that has not prejudiced the contractor or surety does not constitute a default that operates to defeat an otherwise valid bond claim." K&M's briefing only cursorily suggests that this provision ought to defeat the fraud defense, and it did not raise this argument at all to the trial court. This argument is therefore waived and we do not address it. *See Ash v. State*, 422 So. 3d 181, 184 (Fla. 1st DCA 2025) ("[A] single-sentence, non-supported, and non-elaborated 'argument' is insufficient

7

## III. <u>Conclusion</u>

For these reasons, the trial court's grant of summary judgment for GlobalTech and Arch Insurance on their fraudulent notice of nonpayment defense is affirmed.

*Affirmed.*

CIKLIN, J., concurs.
CIKLIN, J., concurs specially with opinion.
GROSS, J., dissents with opinion.

CIKLIN, J., *concurring.*

I fully concur in the majority opinion. I write separately to address two valid concerns raised by the dissent: (1) whether this case presents a factual dispute precluding summary judgment, and (2) whether our decision imposes upon material suppliers a new investigative duty not found in section 255.05, Florida Statutes (2022).

In my view, our majority holding does neither. When properly understood as confined to the undisputed and extreme facts of this record, the majority opinion neither removes a genuine factual dispute from a jury nor imposes a new duty beyond section 255.05's text.

Section 255.05(2)(a)2. provides that a notice of nonpayment is fraudulent if the claimant "willfully exaggerated the amount unpaid," "willfully included a claim for work not performed or materials not furnished for the subject improvement," or "prepared the notice with such willful and gross negligence as to amount to a willful exaggeration." The statute further provides that a "minor mistake or error" or a "good faith dispute" does not defeat an otherwise valid claim. The Legislature thus

---

and not one we can consider as properly presented for appellate review.") (internal quotations omitted) (citing *Jackmore v. Est. of Jackmore*, 145 So. 3d 170, 171 (Fla. 1st DCA 2014) (declining to consider an argument only raised in the summary-of-the-argument section of the initial brief) and *Henderson v. State*, 569 So. 2d 925, 927 (Fla. 1st DCA 1990) (declining to consider a "perfunctory argument" with "no caselaw or other authority" provided in support)); *see Homeowner's Choice Prop. & Cas. Ins. Co., v. Oakes*, No. 4D2024-1873, slip op. at 15 (Fla. 4th DCA March 18, 2026) ("Because the [appellant's] specific arguments were raised for the first time on appeal, they are unpreserved and waived.").

created a calibrated standard. Not every overstatement results in forfeiture. But substantial and reckless overstatements do.

This case does not require difficult line drawing between "minor mistake" and "willful exaggeration." The undisputed record reflects that K&M claimed approximately $123,000 on the bond, while only about $56,000 of materials were actually incorporated into the public project — the only materials recoverable under section 255.05. The notice also included non-recoverable charges and items outside the subcontract's scope. Most significantly, K & M conducted no inquiry whatsoever into whether the materials which it claimed were statutorily eligible before filing its notice of nonpayment.

The dissent characterizes this case as turning on industry standards or the absence of expert testimony. But section 255.05 does not condition forfeiture on proof of professional custom. Section 255.05 turns on what the claimant did. Where the undisputed evidence demonstrates that a claimant sought recovery for amounts that, as a matter of law, were not recoverable — and did so without undertaking even a minimal inquiry into statutory eligibility — a court need not await expert testimony to determine whether such conduct amounts to "willful and gross negligence" under section 255.05.

Nor does our decision impose a novel investigative obligation on material suppliers. A supplier may ordinarily rely on its customer's designation of materials for a project. But reliance is not the issue presented here. The undisputed record reflects not merely reliance, but the wholesale inclusion of all billed amounts — including non-recoverable charges and items outside statutory eligibility — without any effort to determine whether the claim conformed to the statutory requirement that materials be "actually incorporated" into the public improvement. Section 255.05 does not require a job-site inspection. Section 255.05 does require that a claimant invoking the protection of a public bond make some reasonable effort to ensure that the amount claimed falls within the statute's recoverable boundaries.

The dissent is correct that fraud claims are often fact-intensive. But courts routinely resolve fraudulent lien and bond defenses at summary judgment where the overstatement is substantial and the operative facts are undisputed. This is such a case. Section 255.05 does not hinge on subjective good faith alone. Section 255.05 expressly encompasses conduct that, even absent malicious intent, amounts to willful and gross negligence.

9

Finally, I emphasize the narrowness of our holding. We do not hold that any discrepancy between a claimed amount and a recoverable amount renders a notice fraudulent as a matter of law. Nor do we suggest that reliance on a subcontractor's representations is always unreasonable. We hold only that under the undisputed facts of this record — including the magnitude of the overstatement, the inclusion of legally non-recoverable items, and the complete absence of any pre-filing inquiry — summary judgment was proper.

For these reasons, I concur.

GROSS, J., dissenting.

The majority has violated two basic rules of summary judgment.

It has failed to view the evidence in the light most favorable to the non-moving party. And, in the absence of any record evidence, it has furnished its own expert opinion by making a value judgment on the standard of care that a materialman must follow in filing a notice of nonpayment under section 255.05, Florida Statutes (2022).

### *Section 255.05's Framework*

"[T]he major purpose behind [section 255.05,] the public property payment bond statute[,] is to provide subcontractors and suppliers on public projects with the same type of protection available to them on private construction projects under the mechanics' lien law." *Aquatic Plant Mgmt., Inc. v. Paramount Eng'g, Inc.*, 977 So. 2d 600, 603–04 (Fla. 4th DCA 2007). "Section 255.05 is 'remedial in nature and therefore, entitled to a liberal construction, within reason, to effect its intended purpose.'" *Runyon Enters., Inc. v. S.T. Wicole Constr. Corp. of Fla.*, 677 So. 2d 909, 911 (Fla. 1996) (quoting *Palm Beach Cnty. v. Trinity Indus., Inc.*, 661 So. 2d 942, 944 (Fla. 4th DCA 1995)).

K&M is a claimant under the statute because it furnished materials to its customer, a subcontractor on a City of Riviera Beach construction project. Section 255.05(2)(a)2. requires a claimant to file a notice to the contractor that it intends to look to the payment bond for protection. § 255.05(2)(a)2., Fla. Stat. (2022).

A claimant who has not been paid for its materials is required to serve a written "notice of nonpayment" to the contractor. *Id.* The statute contains a form for such notice. Relevant to this case, section 255.05(2)(a)2. provides:

> A claimant who serves a fraudulent notice of nonpayment forfeits his or her rights under the bond. **A notice of**

10

**nonpayment is fraudulent if the claimant has willfully exaggerated the amount unpaid, willfully included a claim for work not performed or materials not furnished for the subject improvement, or prepared the notice with such willful and gross negligence as to amount to a willful exaggeration.** However, a minor mistake or error in a notice of nonpayment, or a good faith dispute as to the amount unpaid, does not constitute a willful exaggeration that operates to defeat an otherwise valid claim against the bond. The service of a fraudulent notice of nonpayment is a complete defense to the claimant's claim against the bond.

*Id.* (emphasis supplied).

### *The Facts in the Record Must be Construed in the Light Most Favorable to the Appellant, the Non-moving Party on Appellees' Motion for Summary Judgment*

On a motion for summary judgment, it is elementary that the undisputed facts are construed in the light most favorable to the non-moving party. For the purpose of the motion, those material facts are as follows.

K&M Electric Supply, Inc., is an electrical materials supplier whose customers are primarily electrical contractors.

Brown Electrical Solutions, LLC was one such contractor.

Brown either picked up from K&M, or accepted delivery from K&M either at the project site or Brown's facility, $123,407.47 in materials designated by Brown employees as being for the Riviera Beach project.

By an April 7, 2022 notice to owner/notice to contractor, K&M indicated that it intended to look to the payment and performance bond for protection.

On August 31, 2022, K&M provided the statutory notice of nonpayment, specifying $123,407.47 as the amount unpaid for "electrical material and related supplies."

Brown's contract on the project totaled $99,500, inclusive of labor and materials.

No record evidence established that K&M knew of the $99,500 contract price on August 31, 2022, when it filed its notice of nonpayment.

No record evidence established that the industry standard was for an electrical materials supplier **not** to rely on the representations of its

11

customer regarding the designation of the ultimate destination for ordered materials, but to make an independent investigation into the veracity of an order before filing a notice of nonpayment.

During litigation, once the problem with Brown's order became apparent, the parties filed affidavits differing on the amount of K&M electrical supplies incorporated into the project; GlobalTech claimed the figure was around $22,000, and K&M set the figure at $56,000.

### *Whether K&M Provided a Fraudulent Notice under Section 255.05(2)(a)2. Was a Question of Fact Precluding Summary Judgment*

Whether K&M served a fraudulent notice of nonpayment is determined by what K&M knew on August 31, 2022, the date the notice of nonpayment was served. For there to be a fraudulent notice, the statute requires that a claimant acted "willfully" or "prepared the notice with such willful and gross negligence as to amount to a willful exaggeration."

Nothing in the record demonstrates an industry standard for the preparation of a notice of nonpayment. The record reflects that K&M trusted the information provided by its client, Brown. No expert opinion in the record established the standard of care a materialman must follow in filing a section 255.05 notice of nonpayment; no expert opinion established that trusting a customer, without more, amounted to "such willful and gross negligence as to amount to willful exaggeration" within the meaning of the statute quoted above. No expert opinion established that, once a customer has ordered a certain amount of materials and advised the materialman that those materials are for a particular project, the materialman must then don the hat of a construction auditor and conduct an independent investigation of the job site to determine the precise quantum of the ordered materials that were "actually incorporated" into the relevant project.

Not to worry. The majority opinion has supplied its own expert opinion.

The industry standard here is not a matter of record. This is not like a standard of care that is common knowledge, like speeding at 125 miles per hour in a school zone.

As with other types of fraud, whether a notice of nonpayment under section 255.05 is fraudulent is typically a fact issue for the trier of fact, dependent on "a full explanation of the facts and circumstances of the alleged wrong." *Palmer v. Santa Fe Healthcare Sys., Inc.*, 582 So. 2d 1234, 1236 (Fla. 1st DCA 1991) (quoting *Hermes v. Anton*, 300 So. 2d 46, 47 (Fla. 3d DCA 1974)). "The issue of fraud is not ordinarily a proper subject for summary judgment." *Sanders Farm of Ocala, Inc. v. Bay Area Truck Sales,*

12

*Inc.*, 235 So. 3d 1010, 1012 (Fla. 2d DCA 2017). "In fraud cases, summary judgment is rarely proper as the issue so frequently turns on the axis of the circumstances surrounding the complete transaction, including circumstantial evidence of intent and knowledge." *Coastal Inv. Props., Ltd. v. Weber Holdings, LLC*, 930 So. 2d 833, 834 (Fla. 4th DCA 2006) (quoting *Cohen v. Kravit Est. Buyers, Inc.*, 843 So. 2d 989, 991 (Fla. 4th DCA 2003)).

So it is here.

The case requires a trier of fact to determine K&M's "willfullness" under the statute. After the problem with the amount claimed in the notice of nonpayment became known during litigation, K&M attempted to identify the amount of materials actually incorporated into the project, which would be required to recover against the bond. *See Fid. & Deposit Co. of Md. v. Waldron's, Inc.*, 608 So. 2d 119, 120 (Fla. 4th DCA 1992) (recognizing that to collect against a section 255.05 bond, a materialman must demonstrate that the subject materials were incorporated into the public project). Viewing the evidence in the light most favorable to K&M, such a statement made after the notice of nonpayment is not determinative of K&M's state of mind in August 2022 when the notice of nonpayment was filed.

Based on the evidence that Brown "ordered $123,407.47 worth of materials from K&M" and "advised K&M that these materials were for Brown's work at the [Riviera Beach] project," a reasonable trier of fact could certainly find that K&M's reliance upon its customer's representations in preparing the notice of nonpayment did not amount to "willful and gross negligence." Instead of allowing a trier of fact to decide whether K&M's reliance amounted to "willful and gross negligence," the majority improperly declares that such reliance constituted "gross negligence" as a matter of law.

We should reverse the final summary judgment and remand to the circuit court for trial on whether, on August 31, 2022, K&M "willfully" made a claim for "materials not furnished" to the Riviera Beach project within the meaning of section 255.05. The majority has imposed a duty on materialmen to conduct an independent investigation on the ultimate destination of materials furnished to a public project. This improperly rewrites the statute and implements a sea change in section 255.05 bond cases.

\*       \*       \*

**Not final until disposition of timely-filed motion for rehearing.**